UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Derek A. Thompson,

    Plaintiff,

v.                                                                                              Case No. 14-cv-2280 (JNE/SER)
                                                                                     ORDER

Robert Kaehn, in his individual capacity
for actions under color of law as a
Robbinsdale police officer;

Matthew Marson, in his individual capacity
for actions under color of law as a
Crystal police officer;

City of Robbinsdale, a political subdivision
of the State of Minnesota; and

City of Crystal, a political subdivision
of the State of Minnesota,

    Defendants.

      This action concerns the use of force deployed by Robbinsdale Police Officer Robert Kaehn and Crystal Police Officer Matthew Marson during the July 1, 2012 arrest of Plaintiff Derek Thompson. It is before the Court on Defendants' motion for summary judgment. For the reasons provided below, the motion is granted in part and denied in part.

## BACKGROUND

      On the morning of July 1, 2012, Officers Kaehn and Marson were in their squad cars near the border of Crystal and Robbinsdale, Minnesota. Kaehn observed Thompson slam on his car brakes, yell something, and make a gesture toward the driver of the van behind him. Kaehn activated his emergency lights and pulled over Thompson. Kaehn observed that Thompson smelled of alcohol and had bloodshot eyes and slurred speech. A routine check of Thompson's

driving status revealed that his license was cancelled as inimical to public safety, according to Kaehn's police report. Thompson agreed to take a preliminary breath test. Kaehn's police report indicates the test revealed a .186 blood alcohol level. Thompson disputes that he was drunk that day, though this dispute is immaterial to the motion before the Court.

Kaehn asked Thompson to exit the vehicle. Kaehn handcuffed Thompson behind his back and, after searching Thompson to confirm he had no weapons, placed Thompson in the backseat of his squad car. Thompson did not struggle or resist during this time. Kaehn left Thompson in the squad car and went to speak with Marson. While unattended, Thompson slid the handcuffs under his legs, moving them from behind his back to the front of his body. Thompson wrapped the seatbelt around his neck and began to choke himself. Kaehn eventually noticed the choking and directed Thompson to "knock it off." Kaehn then stated, "Let go, or you're going to get tased." Thompson continued to choke himself with the seatbelt. Kaehn pulled out a knife and cut the seatbelt so Thompson could no longer choke himself. As Thompson lay in the backseat recovering from the choking, Kaehn called him a "dumb motherfucker" and a "fucking retard."

By this time, Robbinsdale Police Officer Nichole Saba had arrived on the scene. Kaehn and Saba secured Thompson's feet in a hobble, a device that wraps around subjects' feet to immobilize them. Saba operated the hobble from just outside the open backseat passenger's side door. Kaehn walked around to the open door on the other side of the car. Marson, who had left the scene and then returned shortly thereafter to provide assistance, was positioned near Kaehn. At the officers' directions, Thompson moved toward the driver's side door and sat upright. Kaehn instructed Thompson to place his hands above his head so Kaehn could re-cuff Thompson behind his back. Thompson complied and leaned his cuffed hands out the door toward the officer. Kaehn removed Thompson's left wrist from the handcuff and instructed Thompson to

lean forward. As Kaehn attempted to move Thompson's arm, Thompson's eyeglasses were knocked off. Thompson turned toward Kaehn and shouted, "Fuck you. Don't call me a fucking retard, you cocksucker."

What happened immediately after Kaehn began to shout is in dispute and is the crux of the case. The deposition testimony from the three officers at the scene suggests that Thompson lunged at Kaehn. Kaehn testified that Thompson "lunged out of the squad car swinging at me." Saba testified that she saw "Thompson make an aggressive lunge towards Officer Kaehn and Officer Marson." Marson testified that he observed "an arm coming out" and that Thompson "appeared to have been on his own force coming out of the car." By contrast, Thompson testified that he did not lunge or otherwise attack the officers. He testified that he was pulled down and out of the car by Marson and Kaehn.

Regardless of how Thompson's body came out of the car door, it is undisputed that Kaehn delivered two closed-fist punches to Thompson's face. The officers handcuffed Thompson, moved him out of the road, and laid him in the grass, where they positioned his head to prevent him from swallowing his blood. Thompson was transported to North Memorial Hospital, where he received plastic surgery on his lip. Thompson alleges that, as a result of the punches and the surgery, he has considerable scar tissue on his lip that has disfigured his smile.

Thompson filed his complaint in this Court on June 26, 2014. He alleges excessive force claims against Kaehn and Marson under the Fourth and Fourteenth Amendments. He brings common law battery claims against Kaehn, Marson, and their municipal employers, the cities of Robbinsdale and Crystal. He also brings claims against Robbinsdale under the Americans with

Disabilities Act (ADA) and the Rehabilitation Act. Defendants have moved for summary judgment on all claims.[1]

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view facts that the parties genuinely dispute in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

The Court will first discuss the Fourth Amendment excessive force claims before turning to the battery claims and the ADA and related Rehabilitation Act claims.

### A. The Excessive Force Claims

To prevail on an excessive force claim, a plaintiff must show that the defendant used force, the force was excessive because it was not reasonably necessary, and it directly resulted in damages. *See Andrews v. Neer*, 253 F.3d 1052, 1061 & n.7 (8th Cir. 2001). Qualified immunity may shield officers from liability and the burdens of litigation for an excessive force claim. *See*

---

[1] The complaint also alleges an assault count that Plaintiff's counsel waived at the hearing.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts have discretion to decide which part of the inquiry to address first. *Id*. at 236. The Court will analyze the excessive force claim against each officer separately. *See Smith v. City of Minneapolis*, 754 F.3d 541, 547–48 (8th Cir. 2014).

    1. *Officer Marson*

Under Thompson's version of events, Marson held Thompson by the wrists and handcuffs. Marson also pulled Thompson out of the car, but only after Thompson had slipped his handcuffs to the front to choke himself and the officers were attempting to re-cuff Thompson. Thompson does not point to any injuries that resulted from Marson's actions. In these circumstances, the Court finds as a matter of law that Marson did not use excessive force. *See Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015).

    2. *Officer Kaehn*

Defendants argue that Kaehn is entitled to qualified immunity for his split-second decision to punch Thompson. Defendants rely on two cases, *Schoettle v. Jefferson County*, 788 F.3d 855 (8th Cir. 2015), and *Winters v. Adams*, 254 F.3d 758 (8th Cir. 2001).

In both cases, officers used force against a plaintiff who was kicking or punching at the officers. In *Schoettle*, officers attempted to take the plaintiff into custody during a DWI stop in which the plaintiff resisted, physically struggled, and "continued to kick and punch at the officers from the ground." *Id.* at 857–58. The officers struck the plaintiff to subdue him. *Id.* at 858. The Eighth Circuit Court of Appeals affirmed the district court's determination that the officers were

entitled to qualified immunity on the plaintiff's excessive use of force claim. *Id.* at 861. In *Winters*, police officers attempted to subdue the plaintiff during an investigatory encounter. 254 F.3d at 761–62. The plaintiff was "kicking and flailing at the officers." *Id.* at 765. During the struggle, one officer struck the plaintiff in the eye after the plaintiff "either punched or kicked" the officer in the face. *Id.* at 762 & n.4. The Eighth Circuit determined that the officer did not use excessive force and was entitled to qualified immunity. *Id.* at 765–66.

Defendants argue that the same result should apply here because Thompson was demonstrating dangerous and erratic behavior before he swore and lunged at Kaehn. If Thompson in fact lunged at Kaehn, the holdings in *Schoettle* and *Winters* suggest Kaehn would be entitled to qualified immunity. However, whether Thompson lunged at, or otherwise tried to strike, Kaehn is in dispute. The officers testified Thompson lunged. Thompson testified he merely swore at Kaehn before being pulled out of the car and punched.

Defendants do not contest that, if Thompson's testimony is true, qualified immunity would not shield Kaehn from a jury finding that his punches to Thompson's face were excessive and unreasonable. *See Bauer v. Norris*, 713 F.2d 408, 412–13 (8th Cir. 1983); *Agee v. Hickman*, 490 F.2d 210, 212 (8th Cir. 1974); *see also Henderson v. Munn*, 439 F.3d 497, 502–04 (8th Cir. 2006). Instead, Defendants argue that the conflicting deposition testimony is resolved by the video from Kaehn's squad car camera. The Court has viewed this video, as well as the one from Marson's squad car, multiple times. The Court has also studied the photographic stills in the record. This evidence is ambiguous. It does not clearly resolve whether Thompson lunged or was pulled from the car. This is not a case where the videotape so blatantly contradicts one party's version of events such that no reasonable jury could believe it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because of the conflicting and ambiguous evidence on the material question of whether Thompson lunged or was pulled from the car, the Court cannot find that Kaehn's force was reasonable or that he is entitled to qualified immunity. Accordingly, the excessive force claim against Kaehn survives summary judgment.

### B. The Common Law Battery Claims

Thompson brings battery claims against Kaehn and Marson. He also seeks liability for their municipal employers under the doctrine of respondeat superior.

Under Minnesota law, police officers may use reasonable force when executing a lawful arrest. Minn. Stat. § 609.06, subd. 1. A public official is entitled to official immunity from state law claims when the official's duties require the exercise of discretion or judgment. *Johnson v. Morris,* 453 N.W.2d 31, 41 (Minn. 1990). "Generally, police officers are classified as discretionary officers entitled to that immunity." *Id.* at 42. However, an exception exists where the officer acted maliciously or willfully. *Id.* Malice "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991).

For the same reasons given for the excessive force claims, the battery claim against Marson fails, while a material fact dispute precludes summary judgment as to the claim against Kaehn. *See Ward v. Olson*, 939 F. Supp. 2d 956, 964 (D. Minn. 2013). Robbinsdale, but not Crystal, may be liable for battery under respondeat superior. *See id.* at 964 & n.9.

### C. The ADA and Rehabilitation Act Claims

Thompson alleges that Robbinsdale violated Title II of the ADA, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. Thompson bases his claims on a "failure to train" theory. He asserts that Robbinsdale has an outdated police department policy for dealing with

mentally ill persons and that Robbinsdale never trained Kaehn for how to deal with those who are emotionally disturbed and suicidal.

To prevail on his claims, Thompson must establish that he is a qualified individual with a disability who was denied a benefit or service because of his disability. *See Gorman v. Bartch*, 152 F.3d 907, 911–12 (8th Cir. 1998). Furthermore, Thompson must show the city's deliberate indifference to his alleged right to be free from discrimination in the circumstances of this case. *Roberts v. City of Omaha,* 723 F.3d 966, 975–76 (8th Cir. 2013). If the right was not clearly established at the time of the incident, there is no liability for failure to train because "the risk of harm was not so obvious at the time of th[e] incident that [the municipality's] actions [could] properly be characterized as deliberate indifference." *Id.* (internal quotation omitted). Finally, Thompson must show that more adequate training would have resulted in the officer handling the situation differently. *See Thao v. City of St. Paul*, 481 F.3d 565, 568 (8th Cir. 2007).

Here, Thompson fails to identify the benefit or service he was deprived. He fails to show deliberate indifference because he does not point to a single law serving to put Robbinsdale on notice that, at the time of the incident in 2012, the actions taken by Kaehn were in violation of the ADA or the Rehabilitation Act. Finally, he fails to show that more adequate training would have led Kaehn to handle the situation differently. For these reasons, the ADA and Rehabilitation Act claims fail.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment [Docket No. 26] is DENIED in part and GRANTED in part as follows:

   a. The motion is DENIED with respect to the excessive force claim against Defendant Kaehn and the battery claims against Kaehn and the City of Robbinsdale.

   b. In all other respects, the motion is GRANTED and the claims are DISMISSED WITH PREJUDICE.

Dated: May 6, 2016

                                            s/Joan N. Ericksen

                                            JOAN N. ERICKSEN
                                            United States District Judge